UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: ) | CASE NO.  12-21184 |
| ) | |
| WHITEHALL AVENUE, LLC, ) | CHAPTER  11 |
| ) | |
|     DEBTOR ) | RE: ECF  NO.  102 |
| ) | |

APPEARANCES:

Ellery E. Plotkin, Esq.                                        Attorney for Debtor
Law Offices of Ellery E. Plotkin, LLC
777 Summer Street,  2nd Floor
Stamford, CT 06901

Michael G. Helms, Esq.                                    Attorney for Best Western
The Helms Law Firm, PLC                                International, Inc.
2600 North Central Avenue, Suite 940
Phoenix, AZ 85004

**MEMORANDUM AND ORDER
SUSTAINING IN PART AND OVERRULING IN PART
DEBTOR'S OBJECTION TO BEST WESTERN'S CLAIM NO. 16**

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge

## I.   INTRODUCTION

Before the Court is the Debtor's *Objection to Proof of Claim Number 16 - Best Western International, Inc.* (hereinafter, "Best Western"), ECF No. 102. The Debtor objects to (1) Best Western's claim for a statutory penalty under Arizona law for two "bad checks" written by the Debtor; and (2) Best Western's contractual claim for liquidated damages.

The Court, on June 4, 2013, held an evidentiary hearing (hereinafter, the "Hearing") on the matter, at which it received documentary evidence and heard the testimony of (1) Zulfikar Hyder Jafri (hereinafter, "Jafri"), a member of the Debtor with a 25% ownership interest therein and its designated "voting member" under the Best Western Agreement; (2) Scott Fiumara (hereinafter, "Fiumara"), the Debtor's accountant; and (3) Cheryl Pollack (hereinafter, "Pollack"), Best Western's Director of Member Care and Development Administration.  Following the Hearing, the parties filed briefs in support of their respective positions, setting forth their proposed findings of fact and conclusions of law.

For the reasons set forth hereinafter, the Objection will sustained in part and overruled in part.

## II.   JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. §1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(B).

### III. FACTUAL BACKGROUND

Whitehall Avenue, LLC (heretofore and hereinafter, the "Debtor") commenced the captioned bankruptcy case on May 13, 2012 by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

The Debtor is the owner and operator of a hotel in Mystic, Connecticut (hereinafter, the "Hotel"), which it purchased on December 17, 2007. Best Western is an Arizona nonprofit corporation operating as a membership organization of hotel owners. The Hotel's previous owners operated it as a Best Western hotel under an agreement with Best Western. The Debtor entered into a similar agreement (hereinafter, the "Agreement") with Best Western on January 5, 2008, and continued operating the Hotel as a member of Best Western.

In addition to requiring the Debtor to make certain payments to Best Western and to maintain the Hotel's property and services in accordance with Best Western's quality standards, the Agreement gave the Debtor, *inter alia*, access to the Best Western reservation system and a non-exclusive license to use Best Western's trademarks and service marks (hereinafter, the "Best Western Symbols") in connection with the Hotel.

Best Western performed quality inspections of the Hotel every six months. Prior to purchasing the Hotel, the Debtor had contacted Best Western and was informed that the Hotel's most recent inspection report had been excellent and that no property improvements would be needed for the Hotel to continue operating as a Best Western under the Debtor's ownership.

Best Western's first inspection of the Hotel under the Debtor's ownership took place in June 2008, at which time the Hotel passed its inspection, but with a score about 20%

lower than it had received under the prior owner.

Six months later, in the Fall of 2008, the Hotel failed its inspection for the first time and the Debtor was informed that a number of improvements to the property were required. Jafri testified that the Debtor thereafter spent about $20,000 on exterior improvements, but, in June, 2009, once again failed its Best Western inspection, putting it on notice that its Best Western membership was about to be terminated.

The Debtor appealed its potential termination to the Best Western Board of Directors (hereinafter, the "Board"). In July 2009, Jafri met with the Board in Arizona to present the Debtor's proposed plan for improvements. The Board rejected the Debtor's proposal as insufficient, informed the Debtor that extensive capital improvements to the property would be needed, and directed the Debtor to have a comprehensive design report prepared by the Best Western design team. The Debtor paid Best Western $15,000 for the design work. In late July 2009, the Best Western design team visited the Hotel site and prepared its report. The design report required extensive improvements that would cost the Debtor from $800,000 to $1,000,000. The Board required the Debtor to provide immediate proof of funds and to complete the recommended improvements within six months. The Debtor was unable to arrange the necessary financing and the Best Western Board rejected its request for a six-month extension.

On August 5, 2009, Best Western sent the Debtor a letter terminating its Best Western membership and informing it that, in accordance with the Agreement, the Debtor had 15 days, until August 20, 2009, to remove from public view and cease using the Best Western Symbols. The letter also requested that the Debtor keep the Best Western reservation system turned on until at least September 20, 2009 in order to process

cancellations.

After his unsuccessful appeal to the Board, the Debtor, in late July 2009, began discussions with Ramada Worldwide, Inc. (hereinafter, "Ramada") about its franchise opportunities. Ramada required very little in the way of upgrades and improvements to the Hotel property and, on September 30, 2009, the Debtor and Ramada executed a franchise agreement and the Hotel became the Ramada Mystic Hotel. Ramada immediately provided the Debtor with a large opaque vinyl banner bearing the "Ramada" name in red letters on a white background to place over the Best Western sign until the Hotel's new permanent Ramada sign was installed in January 2010. Fiumara testified that replacing the permanent sign required changing the shape of the frame and obtaining zoning approval from the town.

Jafri testified that, upon receipt of Best Western's August 5, 2009 termination letter, he immediately took steps to remove from the Hotel rooms all of the toiletries, linens, and other items that bore the Best Western Symbols, removed all promotional materials, and notified the "web council" that administered the Debtor's "bwmystic.com" website[1] to delete all references to the Hotel as a Best Western and to automatically redirect all inquiries to its new Ramada website. Jafri testified that, by October 15, 2009 at the latest, the Best Western sign had been covered with the Ramada banner and all Best Western Symbols had been removed from the Hotel, its promotional materials and its website.

Best Western's billing statements for the Debtor's Best Western account

---

[1] The Hotel was represented by two websites on the internet. One, owned and operated by Best Western, was part of the Best Western reservation system, which the Debtor was requested to keep "on" until at least September 20, 2009. The Debtor also had its own website, "www.bwmystic.com," which had been set up and prepaid by the previous owner.

(hereinafter, the "Statements"), Exh. 5, show that the Debtor failed to pay Best Western the fees and charges billed for several months prior to termination of its membership. The Statements reflect unpaid balances from November 2008 and all months thereafter. The Debtor does not dispute the validity or amount of such charges, but does note that the $116,076.27 balance includes chargebacks for two returned checks:

1) check no. 1394 in the amount of $7,000.00, received by Best Western on March 31, 2009, was returned by the bank for insufficient funds and charged back to the Debtor's Best Western account on April 15, 2009; and

2) check no. 1466 in the amount of $42,068.05, received by Best Western on July 13, 2009, was returned by the bank for insufficient funds and charged back to the Debtor's Best Western account on July 27, 2009.

On September 17, 2009, Best Western commenced an action in the United States District Court for the District of Arizona (hereinafter, the "District Court") against the Debtor and Jafri seeking to recover, *inter alia*, the unpaid account balance, twice the amount of the dishonored checks, and liquidated damages under the Agreement. Upon the commencement of the instant bankruptcy case the District Court action was stayed as to the Debtor by the automatic stay of Bankruptcy Code §362.

## IV. DISCUSSION

In its Proof of Claim, Claim 16-2,[2] Best Western asserts a claim for $1,320,739.87 arising out of the Agreement. There are three components to its claim:

1) $116,076.27 as the past due balance on the Debtor's Best Western account for

---

[2] Best Western, on August 30, 2012, filed Claim 16-1, which was subsequently amended by Claim 16-2 on March 5, 2013.

unpaid dues, fees and assessments;

2) $98,136.10 as statutory damages of under Arizona law, A.R.S. §12-671, equal to twice the amount of two checks, in the amounts of $7,000.00 and $42,068.05, written by the Debtor to Best Western which were returned for insufficient funds; and

3) $1,106,527.50 for liquidated damages under the Agreement for the Debtor's alleged unauthorized post-termination use of the Best Western Symbols from August 21, 2009 through January 10, 2011 (507 days).

As a threshold matter, the Court finds inapposite Best Western's argument that, under Arizona law, the doctrine of issue preclusion, or collateral estoppel, the judgment against Jafri in the District Court should preclude the Debtor from relitigating the validity or amount of Best Western's claim against the Debtor in the Bankruptcy Court. Because the judgment against Jafri was entered in a federal court, its preclusive effect is determined under *federal*, rather than state preclusion law. The United States Supreme Court has consistently held:

> But one general limitation the Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate that issue in the earlier case. *Montana v. United States*, *supra*, at 153, 99 S.Ct., at 973; *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation, supra*, 402 U.S., at 328–329, 91 S.Ct., at 1443.

*Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415 (1980); *see also Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 250, 118 S.Ct. 657, 672 (1998)*; Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 480-481, 102 S.Ct. 1883, 1897 (1982).

To preclude the Debtor from litigating the validity and amount of Best Western's claim on the basis of litigation which was stayed from proceeding against the Debtor and a judgment which could not have entered against the Debtor would be to deny the Debtor the protection afforded by Congress in the automatic stay of §362(a) without complying with the requirements for relief from stay under §362(d). Accordingly, the Court finds that the Debtor is not precluded from litigating in the Bankruptcy Court the validity and amount of Best Western's claim.

### A.  *Past Due Account*

The Debtor does not dispute that it owes $116,076.27 for unpaid dues and assessments incurred prior to termination of its Best Western membership. The Debtor noted, however, that the account balances, Exh. 5, include chargebacks of $7,000 and $42,068.05 for the two returned checks.

### B.  *Dishonored Checks*

The Debtor does not dispute that its checks, in the amounts of $7,000.00 and $42,068.05 were dishonored by its bank because the Debtor's account had insufficient funds. Best Western admitted that its statements, Exh. 5, include chargebacks for such checks. The parties disagree, however, on whether the Debtor's liability for the returned checks should be determined under Arizona law, which permits recovery of twice the amount of the checks, or Connecticut law, which does not.

The Debtor argues that Connecticut law should apply because the Debtor is a Connecticut LLC, located in Connecticut, and the checks were drawn on the Debtor's account at a Connecticut bank. Best Western argues that the Court should apply Arizona law because the Agreement specifies that it be construed in accordance with Arizona law,

8

Best Western has its primary place of business in Arizona and the checks at issue were mailed to Best Western at its Arizona address and deposited at its bank in Arizona.

The Agreement contains a choice of law provision that states, in relevant part, "This Membership Application and Agreement shall be governed and construed according to the laws of the State of Arizona . . . ." Agreement, Exh. 1, ¶37. However, the Agreement includes no provision concerning payment by or dishonor of a check. The Court, therefore, performs a choice of law analysis to ascertain whether the Debtor's liability for the dishonored checks is determined under the laws of Connecticut or Arizona.

> For cases such as this one, we hold that bankruptcy courts should follow *Van Dusen*[3] and look to the choice of law rules of the state where the underlying prepetition complaint was filed. This is the appropriate course of action where, as here: (1) the claim before the bankruptcy court is wholly derived from another claim already pending in a parallel, out-of-state, non-bankruptcy proceeding; and (2) the pending original, or "source," claim was filed in a court prior to the commencement of the bankruptcy case.

*In re Coudert Bros. LLP*, 673 F.3d 180, 191 (2d Cir. 2012) (footnote added) (distinguishing certain bankruptcy cases from the general rule in diversity cases of applying the choice of law rules of the forum state) .

As in *Coudert Bros.*, Best Western's claim is wholly derived from the claim it filed, prepetition, in the District Court in Arizona. Accordingly, the Arizona choice of law rules determine whether Arizona law or Connecticut law applies to the Debtor's dishonored checks.

"Arizona courts follow the Restatement (Second) of Conflict of Laws (hereinafter 'Restatement') as a guide in choice of law questions . . . . According to the Restatement,

---

[3] *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805 (1964).

the objective is to apply the law of the state that has the 'most significant relationship" with the parties and the dispute.'" *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (citations omitted)  The various factors "are to be evaluated according to their relative importance with respect to the particular issue."  *Parkway Bank and Trust Co. v. Zivkovic*, 232 Ariz. 286, 291, 304 P.3d 1109, 1114 (Ariz. App. 2013) (quoting Restatement §188(2).

The Debtor is a Connecticut LLC, wrote the checks in Connecticut, against its account at a bank in Connecticut.  Best Western is an Arizona corporation, which received the checks in Arizona, and deposited them in an Arizona bank.  Significantly, however, the Agreement, pursuant to which the Debtor's payments were made, includes a choice of law provision specifying that it be construed in accordance with Arizona law.  The Court finds that Arizona has the more significant connection to the checks at issue and that Arizona law, including A.R.S. §12-671, is therefore applicable to determine the Debtor's liability on the dishonored checks.

The Debtor's liability to Best Western for the dishonored checks is in the amount of $98,136.10, twice the amount of the dishonored checks. Since $49,068.05 of such amount is already included in the unpaid balance of $116,076.27, *supra*, Best Western's claim against the Debtor's estate is allowed in the additional amount of $49,068.05.

### C.    *Liquidated Damages*

Finally, the Court considers the portion of Best Western's claim arising from the Debtor's alleged post-termination unauthorized use of the Best Western Symbols.  The Agreement includes the following relevant provisions:

Termination of License

22.    This License shall terminate upon termination of Applicant's

> Membership Agreement. Within fifteen (15) days of License termination, Applicant shall remove from public view and cease using all Best Western Symbols. This prohibition includes any representation, directly or indirectly that the Hotel was formerly affiliated with Best Western. Furthermore, Applicant shall actively take such steps as may be necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western Symbol.
>
> 23. Upon termination of this License Agreement, Applicant agrees not to use anything consisting of or incorporating any one or more words, letters, designs or devices which contain any part of any Best Western Symbol, or which singly or together are similar in spelling, sound, appearance or otherwise to any Best Western Symbol.
>
> Remedies
>
> 24  For each day during which any Best Western Symbol or any name, symbol or device described in paragraph 23 are used in connection with the Hotel, after fifteen (15) days following termination of this License Agreement, Best Western may elect to claim from Applicant daily damages in an amount equal to fifteen percent (15%) of the mean of the Hotel's room rates per room per day multiplied by the total number of rooms. This amount is payable by Applicant whether or not Applicant continues to exercise control over the operations of the Hotel, It is understood and agreed that said amount is fixed as liquidated damages because of the difficulty of ascertaining the exact amount of damages that may be sustained because of such use. It is further understood and agreed that said amount fixed as liquidated damages is a reasonable amount, considering the damages that Best Western will sustain in the event of such use.

Agreement, Exh. 1, ¶¶ 22 - 24.

Best Western determined from its reservation system that the Debtor's average daily room rate was $97.00, which the Debtor has not disputed. The Hotel has 150 rooms. The formula set forth in ¶ 24 of the Agreement results in liquidated damages of $2,182.50 per day. Best Western's claim seeks liquidated damages of $1,106,527.50 for the Debtor's alleged post-termination use of the Best Western Symbols for the 507 days from August 21, 2009 through January 10, 2011.

11

Because the matter concerns the construction and interpretation of the terms of the Agreement, in accordance with the Agreement's choice of law provision, the Court looks to Arizona law. *See Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 207, 841 P.2d 198, 202 (Ariz. 1992) (contractual choice of law provision enforceable in accordance with Restatement §187).

> A federal court . . . must be mindful that it follow the law determined by the highest court of the state whose law is applicable to resolution of the dispute. When that state court has not directly ruled on the issue under consideration, the federal court must make an estimate of what the state's highest court would rule to be its law. In calculating this estimate, the federal court may consider all data the high court would use in reaching its decision. Thus, the federal court may discern [that] state's law by examining relevant decisions from [that] state's inferior courts, decisions from sister states, federal decisions, and the general weight and trend of authority.

*Cumis Ins. Soc., Inc. v. Windsor Bank & Trust Co.*, 736 F.Supp. 1226, 1230 (D.Conn. 1990) (citations and internal quotation marks omitted).

### (i) Enforceability of Liquidated Damage Clauses

"It is well settled that in determining whether a particular clause calls for liquidated damages or for a penalty, the name given to the clause by the parties is not conclusive . . . ." *Aztec Film Productions, Inc. v. Quinn*, 116 Ariz. 468, 470, 569 P.2d 1366, 1369 (Ariz. App. 1977). As a corollary to this well-settled rule, the Court also finds inconclusive the recitation in ¶ 24 of the Agreement, *supra*, that the parties agree that the requirements for an enforceable liquidated damages clause are satisfied.

> While the traditional role of a liquidated damages clause is to provide "an economical alternative to the costly and lengthy litigation involved in a conventional breach of contract action," "parties to a contract are not free to provide a penalty for its breach." *Pima Savings & Loan Ass'n v. Rampello,* 168 Ariz. 297, 299, 812 P.2d 1115, 1117 (App.1991). Whether or not a provision for liquidated damages amounts to a penalty depends upon the

> circumstances of each individual case, and is a question of law for the Court. *Id.* at 300; 812 P.2d at 1118 (citing *Marcam Mortgage Corp. v. Black,* 686 P.2d 575 (Wyo.1984)). Under Arizona law, an agreement made in advance of a breach is a penalty unless both of two conditions are met: 1) "the amount fixed in the contract must be a reasonable forecast of just compensation for the harm that is caused by the breach", and 2) "the harm that is caused by any breach must be one that is incapable or very difficult of accurate estimation." *LarsonHegstrom & Assoc., Inc. v. Jeffries,* 145 Ariz. 329, 333, 701 P.2d 587, 591 (App.1985) (citing Restatement (Second) of Contracts § 356). In determining if these two criteria have been met, the Court considers "all the facts and circumstances" of the specific case. *Id.* at 333, 701 P.2d at 591. The reasonableness of the amount fixed in the contract and the difficulties of proof of loss are determined at the time the contract is made, not at the time of the breach. *Pima Savings & Loan Ass'n,* 168 Ariz. at 300, 812 P.2d at 1118; *see also* Restatement (Second) of Contracts § 356, cmt. b (1981). However, the amount retained upon a contract's breach will be considered a penalty if it is unreasonable. *Marshall v. Patzman,* 81 Ariz. 367, 306 P.2d 287 (1957).

*Best Western International, Inc. v.. Royal Albert's Palace, Inc.*, 2011 WL 285818, *5 (D.Ariz. 2011).

Best Western urges the Court to hold the liquidated damages clause enforceable because "[t]he enforceability of the liquid damages provision in the Best Western Membership Agreement has previously been considered by several courts." ECF No. 169 at 8 (citing *Best Western Int'l, Inc. v. Oasis Invs.*, 398 F.Supp.2d 1075, 1081 (D.Ariz. 2005). This argument is unavailing. In *Oasis*, "Oasis did not contest the reasonableness of the liquidated damages formula." *Id*. *See also Royal Albert's*, 2011 WL 285818, *5 (D.Ariz. 2011) (defendant "offered no facts to contest the reasonableness of the liquidated damages"); *Best Western Int'l, Inc. v. Sharda*, 2009 WL 1749458 (D.Ariz. 2009) (Best Western's requests for admissions deemed admitted due to defendant's failure to respond; so facts not in dispute); *Best Western Intern., Inc. v. Richland Hotel Corp. GP, LLC*, 2012 WL 608016, (D.Ariz. 2012) (default judgment; reasonableness of liquidated damages

formula not at issue; facts not disputed).

"Whether or not a provision for liquidated damages amounts to a penalty depends upon the circumstances of each individual case . . . ." *Royal Albert's*, 2011 WL 285818 (D.Ariz. 2011); *see also Richland,* 2012 WL 608016 (D.Ariz. 2012). The Court, therefore, looks to the *particular facts and circumstances* of *this* case in deciding whether, and to what extent, the liquidated damages provision of the Agreement may be enforced.

On the basis of the evidence produced at the Hearing, the Court finds that, for the period from August 21, 2009 to October 15, 2009, it is undisputed that the Hotel sign and/or website did display Best Western Symbols in a material breach of the relevant terms of the Agreement. However, as to the period subsequent to October 15, 2009, there is considerable dispute as to the facts and the legal consequences thereof. The Court, therefore, will separately consider each of these time periods.

**(ii)    Prior to October 15, 2009**

"A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Best Western properly filed its proof of claim, Claim No. 16-2, shifting the burden of production to the Debtor to produce evidence to rebut it.

The Debtor does not dispute that, prior to installation of the Ramada banner and the redirection of inquiries to its "bwmystic.com" website to its Ramada website, the sign and website displayed Best Western Symbols. The Debtor claims that all Best Western Symbols were removed by October 15, 2009 at the latest.

The Debtor argues that the liquidated damages formula is unreasonable because

14

it does not take into account the occupancy rates of the Hotel.  Best Western argues that the liquidated damages it seeks are to compensate Best Western for its losses from the Debtor's unauthorized use of the Best Western Symbols, not for losses from termination of the Debtor's Best Western membership; and that such losses are not a function of the Hotel's occupancy rates.

The Debtor has not demonstrated why the absence of occupancy rates in the liquidated damages formula in the Agreement makes it unreasonable, particularly in light of the 15% factor that is applied to the product of the average daily room rate times the number of rooms.

Best Western's claim for liquidated damages of $2,182.50 per day for the 56 days from August 21, 2009 (15 days after the termination letter) through October 15, 2009 is allowed in the amount of $122,220.00.

### (iii)    After October 15, 2009

Best Western also seeks additional liquidated damages in the amount of $984,307.50:  $2,182.50 per day for the 451 days from October 16, 2009 to January 10, 2011, claiming that the Debtor continued its unauthorized use of the Best Western Symbols throughout such time.

The Court finds that the evidence adduced at the Hearing provides little credible support for such claim.  Best Western's evidence of the Debtor's alleged use of the Best Western Symbols after October 15, 2009 concerns either the internet or the Hotel sign.

### (a)    Internet

Best Western provided two documents, Exhibits 10 and 11, which purport to be

printouts of web pages showing the Debtor's post-termination use of the Best Western Symbols. Exhibit 11 is a half-page text-only description, dated January 10, 2011, of the Hotel in which the Hotel is referred to only as the "Mystic Hotel" throughout, including the heading of the page, the address, etc., except for one reference to it within the text of a paragraph as the "Best Western Mystic Hotel." Jafri testified that he did not recognize the content and that, because all inquiries to the "bwmystic.com" website were automatically redirected to the Hotel's Ramada site after mid-October 2009, it could not have been accessed through the Debtor's website. Exhibit 10 is a printout of several web pages, dated December 14, 2009, which Jafri recognized as the website he had ordered taken down and redirected. Again, Jafri testified that the "bwmystic.com" website could not have been accessed directly. Jafri suggested that the printouts at issue were likely obtained from a cache, a file containing copies of previously viewed web pages which have not been updated; search engines, *inter alia*, commonly use cached files to expedite searches.

The source of the printout was described by Pollack only as a "third-party website scan." The third-party was not identified; Best Western offered no explanation of how the web pages at issue were accessed; and Pollack testified that the third-party did not attempt to verify ownership of the website. Best Western has not shown that the printouts at issue were current as of the dates shown and were not outdated cached web pages obtained, for example, from an internet search engine.

The Court is not persuaded that these documents, standing alone, provide credible evidence of the Debtor's unauthorized use of the Best Western Symbols, and finds that the Debtor did not use the Best Western Symbols on its website after October 15, 2009.

**(b) Sign**

By October 15, 2009, the Best Western sign in front of the Hotel was almost entirely covered on both sides by large, rectangular, red and white Ramada banners. Best Western introduced into evidence a dark, blurry, black and white scan of a photograph (hereinafter, the "Photo"), dated November 15, 2009, of the Hotel sign with the Ramada banner. Exh. 9. The photographer was not identified and neither the original photograph nor a color copy was available. The Photo showed the Best Western name completely covered by the Ramada banner and no Best Western Symbols were visible in the Photo except for the curved shape of the very top of the sign cabinet.

> In analyzing the enforceability of contract provisions such as the one at issue in this case, the rule followed in Arizona and elsewhere is that an agreement made in advance of a breach is a penalty, unless both of two conditions are met. First, the amount fixed in the contract must be a reasonable forecast of just compensation for the harm that is caused by the breach. Second, the harm that is caused by any breach must be one that is incapable or very difficult of accurate estimation. Restatement (Second) of Contracts, § 356; Restatement (First) of Contracts, § 339;. . .

*Larson-Hegstrom & Associates, Inc. v. Jeffries*, 145 Ariz. 329, 333, 701 P.2d 587, 591 (Ariz. App. 1985) (citations and footnote omitted).

The District Court in Arizona has consistently upheld the enforceability of Best Western's liquidated damages formula, albeit in summary judgment or default judgment cases where the neither the facts nor the reasonableness of the formula under the circumstances of a particular case were disputed. *See* Part IV(C)(i), *supra* (listing cases). That it would be difficult, at the time the Agreement was signed, to estimate the damages to Best Western from the Debtor's post-termination unauthorized use of the Best Western Symbols is not disputed.

Because of the Ramada banner, it is highly unlikely that the public would be confused as to the Hotel's affiliation or that Best Western could show any actual damage to its reputation or diversion of business as a result of the Debtor's technical breach. However, the Arizona Court of Appeals has held that a liquidated damages clause may be reasonable even though it does not require a showing of any actual damages. *Mechanical Air Engineering Co. v. Totem Const. Co.*, 166 Ariz. 191, 193, 801 P.2d 426, 428 (Ariz. App. 1989).

The curvilinear sign cabinet was removed in January 2010 at which time the permanent Ramada sign was installed. Applying the liquidated damages formula to the 108 days from October 16, 2009 through January 31, 2010 would result in liquidated damages of $235,710.00.

> Although the proper test under *Tennent*[4] is not disparity between the prospective forfeiture and the loss actually sustained, the rule has no application unless the court first finds that such forfeiture was intended as liquidated damages, and disproportionate actual damages may have some bearing on determination of that intent.

*Aztec Film*, 116 Ariz. at 470, 569 P.2d at 1368 (citations and internal quotation marks omitted).

The Court finds that damages of almost a quarter of a million dollars for a minor technical breach is excessive in light of the minimal, if any, harm to Best Western; and that such a disproportionate result renders the provision, as it pertains to the events of October 16, 2009 through January 31, 2010, an unenforceable penalty clause, rather than an enforceable liquidated damages clause.

---

[4]  *Tennent v. Leary*, 82 Ariz. 67, 308 P.2d 693 (1957).

Ordinarily, "[w]hen a court concludes that a liquidated damage clause is a penalty, it will refuse to enforce the clause as void and against public policy. Instead, it will limit recovery to the actual loss." *Mechanical Air*, 166 Ariz. at 193, 801 P.2d at 428. Rather than finding that the clause, in its entirety, is unenforceable as a penalty, however, the Court elects "to employ judicial interpretive surgery to save a liquidated damages clause by reading it in a reasonable rather than a literal manner." *Jordache Enterprise, Inc. v. Global Union Bank*, 688 F.Supp. 939, 944 (S.D.N.Y. 1988). The Court construes the Agreement's liquidated damages formula in ¶24 as applying only in the event of a *material* breach of the terms, in ¶¶ 22-23, concerning post-termination use of the Best Western Symbols. Because the Court finds the liquidated damages provision unenforceable as to the events after October 15, 2009, Best Western's recovery therefor is limited to its actual damages. Since Best Western has provided no evidence of any such actual damages, the portion of its claim attributable to the period of time after October 15, 2009 is disallowed.

## V.  ORDER

In accordance with the foregoing discussion,

**IT IS HEREBY ORDERED** that the Debtor's Objection is **SUSTAINED** *in part* and **OVERRULED** *in part*, and

**IT IS FURTHER ORDERED** that Best Western's claim is:

(a)   **ALLOWED** in the total amount of $287,364.29, comprised of $116,076.27 for the unpaid fees and charges to Best Western (including the chargebacks for returned checks); $49,068.05 for the Arizona statutory charges for the returned checks; and $122,220.00 in liquidated damages for unauthorized use of Best Western Symbols

from August 21, 2009 through October 15, 2009; and

(b)    **DISALLOWED** as to any amount in excess thereof.

Dated: April 1, 2014                                        BY THE COURT

*Albert S. Dabrowski*
Albert S. Dabrowski
Chief United States Bankruptcy Judge